I. PURPOSE

Officers periodically come into contact with individuals in extreme distress or suffering from some type of mental illness. Some of these individuals are at-risk of death and require proper medical care. The purpose of this directive is to provide officers with information that will allow them to:

A. Identify subjects who are in extreme distress and may be at-risk of sudden death during restraint encounters and;

B. Identify subjects who may be mentally ill and may require assistance or access to available community mental health resources;

C. Manage the situation in a manner that minimizes the risks to all involved and;

D. Facilitate medical care for the individual as soon as practical.

II. POLICY

The CMPD recognizes and respects the integrity and paramount value of human life. Consistent with this primary value is the CMPD's full commitment to protect the safety of officers and others, including individuals at-risk for extreme distress or those who may be suffering from some type of mental illness.

III. DEFINITIONS

A. Positional Asphyxia: Occurs when the position of the body interferes with normal breathing. The inability to adequately breathe creates a lack of oxygen in the body which may result in unconsciousness or suffocation ("asphyxiation"). The inability to breathe properly may result from the body's position interfering with the muscular or mechanical function of breathing, from the compromising or blocking of the airway, or from some combination of the following:

1. The body position most likely to contribute to positional asphyxia is that of being "hog-tied" (handcuffed behind the back, feet bound and raised towards hands, and placed face down). However, positional asphyxia may occur even though the subject is not restrained as described above. For example, simply being handcuffed behind the back (the preferred method for safety reasons) and being placed face down could cause positional asphyxia.

2. Additional factors that may contribute to positional asphyxia include:

a. Mental condition of the subject;

b. Presence of cocaine or other stimulating substances in the subject's system;

c. Anatomy of the subject.

B. Restraint Asphyxia: is usually caused by a combination of exhaustion, exertion, fear and restricted breathing due to restraint or the use of force.

C. Excited Delirium: A condition in which the heart races wildly, often because of drug use or mental illness, and finally gives out causing death.

1. Excited delirium is the result of a serious and potentially life threatening medical condition. The person can appear normal until they are questioned, challenged or confronted. Further confrontation, threats and use of force will almost certainly result in further aggression and even violence. Attempting to restrain and control these individuals can be difficult because they frequently possess unusual strength, pain insensitivity and instinctive resistance to any use of force.

2. Factors that may contribute to excited delirium include:

   a. Alcohol intoxication;

   b. Drug use (especially cocaine);

   c. Obesity;

   d. Delirium (mental illness including psychosis and schizophrenia and/or drugs);

   e. Intoxication.

3. Because at-risk individuals could potentially die without proper medical attention, it is important for officers to recognize subjects who may be in extreme distress. The following signs may be exhibited.

   a. The person's ability to focus, sustain or shift attention is impaired, and he/she is easily distracted.

   b. The person may be rambling and incoherent, and it may be difficult or impossible to engage the person in conversation.

   c. The person may exhibit signs of paranoia, fear and excitability. The presence of police officers may further heighten this feeling.

   d. The person may also be disoriented in regards to time and/or locations, suffer from misleading perceptions, and/or experience hallucinations or delusions.

   e. Due to elevated body temperature, many of these individuals remove one or more items of clothing.

   f. They often possess unusual strength and endurance, as well as appear impervious to pain.

   g. These symptoms can progress into agitation, anger and aggressiveness.

h. Subjects suffering from excited delirium have a tendency towards violence against people, as well as inanimate objects, particularly glass.

i. Subjects who while being combative and/or agitated suddenly become compliant, placid or go limp may be a warning to officers that the subject may be going into cardiac or respiratory arrest.

1) Officers should physically check the subject's breathing.

2) Officers should ask the subject questions to ascertain his/her awareness.

3) If the subject is in a prone position, officers should attempt to get him/her into a sitting position and check for any restrictions to the airway.

4) Officers will summon MEDIC to respond to have the subject evaluated and/or provide advanced life support.

D. Mobile Crisis Team: A team of mental health professionals who have been contracted with Mecklenburg County Area Mental Health to assist CMPD employees in their interactions with mental health consumers. The Mobile Crisis Team members are available to CMPD employees 24/7/365.

E. Crisis Intervention Team (CIT) Officers: Law enforcement officers who have received specialized training to deescalate crisis situations involving individuals in distress and then in partnership with community providers divert these individuals into treatment services.

F. Trauma & Justice Partnerships: A division of the Mecklenburg County Health Department which is the service delivery organization for mental health, substance abuse, and developmental disabilities services in Mecklenburg County.

IV. PROCEDURE

Once it is determined that a subject may be at-risk of extreme distress, the incident shall be managed as a medical emergency, in addition to whatever law enforcement response may be required under the circumstances, including the use of reasonable force.

A. Role of Officer

If an officer responds to an incident and concludes an individual may be at-risk for positional asphyxia, restraint asphyxia and/or excited delirium, the officer will as soon as practical request MEDIC if they were not initially dispatched. The officer will designate a nearby safe location for MEDIC personnel to stage until the scene is secure. The officer will notify their supervisor. Supervisors will respond to the scene of all instances of suspected subjects in extreme distress.

1. If the person appears unarmed and does not appear to pose an immediate threat to the physical safety of officers or to other persons, or to him or herself, or pose an immediate threat to escape, the initial arriving officer will wait until backup arrives before any attempt is made to approach the person. Officers will, if practical, contain the subject while maintaining a safe distance. The objective in this situation is to gain the person's voluntary cooperation. One or more of the following may be helpful in gaining the person's cooperation:

    a. Attempt to "talk the person down." Ideally, only one officer should engage the person in conversation. The officer should project calmness and confidence and speak in a conversational and non-confrontational manner. Whenever possible, determine if the person can answer simple questions which will give the officer an idea of the level of coherence of the person. Officers should turn down their radios.

    b. Remember the person's mind may be racing, or he/she may be delusional, so statements and questions may need to be repeated several times and officers should be patient.

    c. If beneficial, an officer may enlist the assistance of a family member or another person who has rapport with the individual or a mental health professional who can safely participate in attempting to gain the individual's cooperation.

2. If the person is armed or combative or otherwise poses an immediate threat to the physical safety of officers or to other persons, or to him or herself, officers shall employ the amount of force that is reasonable and necessary to protect themselves and others at the scene and to take the person into custody. To practical extents, efforts should be made to minimize the intensity and duration of the subject's resistance and to avoid engaging in a potentially prolonged struggle.

3. Officers will notify Communications of any force applied to the subject and have Communications relay that information to MEDIC. Once MEDIC arrives, officers will provide a detailed description of the force applied and the level/intensity of resistance by the subject.

4. If an officer has reason to believe a prisoner has ingested contraband, the prisoner will be transported to a medical facility where the prisoner will remain under arrest and the officer(s) will make certain that the arrest process will continue. Officers will notify their immediate supervisor any time a suspect has ingested contraband. A Division Commander or Operations Command will determine if there is a need to maintain a rotation to guard the prisoner.

5. If an arrest is appropriate, the arrest process will be completed upon the prisoner's release from the medical facility.

6. If MEDIC is called to treat the prisoner and transport the prisoner to a medical facility, officers will maintain custody of the prisoner. The transporting officer will advise Mecklenburg County Intake personnel whenever a prisoner has been treated for ingesting contraband.

B. Role of Telecommunicator

The telecommunicator may recognize a potential case of excited delirium, in which case they will communicate their observations to the officer and dispatch MEDIC personnel. The telecommunicator should request that a CIT officer responds to the incident if available. The telecommunicator will inform the responding officer(s) that MEDIC is responding and their ability to stage. The responding officer(s) will relay the designated safe location for MEDIC personnel to stage until the scene is secure.

C. Role of MEDIC

MEDIC will respond to the staging area and await notification that the scene is secure. Once notified, MEDIC will evaluate the individual, administer appropriate care and monitor the individual until he/she is delivered to an emergency medical facility.

D. Once in custody, to reduce the possibility of aggravating the symptoms of a subject in extreme distress, officers should:

1. Avoid placing a subject in a position that is likely to contribute to positional asphyxia. In particular, hog-tie restraints and control restraints while lying on back/stomach should be avoided. Weight should not be put on the subject's back for a prolonged period.

2. Provide close and continuous monitoring of the subject for any signs of medical distress such as labored or irregular breathing, unresponsiveness, incoherence or verbally indicating that he/she is in distress.

3. The subject should be returned to an upright position as soon as tactically feasible.

E. Once the scene is safe, MEDIC personnel are to be called in. The person's breathing shall be monitored at all times and the person's position adjusted so as to maximize the person's ability to breathe.

F. MEDIC will advise if the subject should be transported by ambulance to an emergency medical facility for evaluation and treatment or if a subject can be transported by the officer in which case the breathing of the subject should be closely monitored. If possible, a second officer should accompany the transporting officer to monitor the subject. If a second officer is not available, the transporting officer should stop the vehicle periodically and confirm that the subject is conscious and able to breathe normally.

G. When answering calls for service, or conducting interviews and interrogations, personnel may encounter situations where they interact with persons suspected of suffering from mental illness.

1. Officers will utilize their training and the following guidelines to assist in recognizing and evaluating persons suffering from mental illness.

a. Behavioral Clues

1) Unusual physical appearance (inappropriate clothing),

2) Unusual body movements (sluggish, pacing),

3) Hearing voices,

4) Confusion about or unawareness of surroundings,

5) Lack of emotional response,

6) Causing injury to self (cutting, cigarette burns),

7) Extreme or inappropriate expressions of sadness or grief,

8) Inappropriate emotional reactions.

b. Environmental Clues

1) Strange decorations (aluminum foil, pentagrams),

2) Hoarding of garbage, newspapers, string,

3) Presence of feces or urine on floors or walls.

2. When dealing with persons suspected of being mentally ill, personnel will utilize the following guidelines during contacts on the street, as well as during interviews and interrogations;

a. Remain calm, avoid overreacting.

b. Be helpful and professional.

c. Speak simply and slowly.

d. Indicate a willingness to understand.

e. Gather additional information on the person.

f. Understand that a rational discussion may not take place.

g. Recognize the person may be overwhelmed by external and internal stimuli.

h. Be friendly, patient, accepting, but firm and professional.

i. Recognize a person's delusions or hallucinations are very real for them.

3. After recognizing officers are dealing with persons suffering from mental illness, officers will utilize the following procedures when seeking assistance or accessing available community mental health resources:

a. Evaluate prior contact with police

1) Type of problem,

2) Prior violence,

3) Method of resolution.

b. Gather information regarding situation

1) Family members,

2) Neighbors,

3) Complainant(s).

c. Contact an on-duty CIT officer(s) and request that they respond to the scene. If necessary, request the Mobile Crisis Team (MCT) to respond to the scene. The CIT officer(s) and/or the MCT will function as the gateway to community mental health resources.

The MCT will:

1) Assist in stabilizing the situation,

2) Complete a mental health assessment, if necessary,

3) Make referrals/linkages to the Trauma & Justice Partnerships or other vital services as needed,

4) Conduct follow-up assessments.

4. Training

a. Entry level training

All sworn and civilian personnel who may be expected to come into contact, or communicate with, persons suffering from mental illness are required to obtain documented entry-level training.

b. In-service training

All agency personnel who may be expected to come into contact, or communicate with, persons suffering from mental illness are required to obtain documented refresher training at least every three years.

Additional training may be conducted at the discretion of the Training Director.

Officers are encouraged to volunteer to attend the 40-hour Crisis Intervention Team training, which goes into much more detail and brings attendees face to face with consumers, or those with mental health issues, substance use disorders and intellectual and developmental disabilities. Officers are trained to intervene, using their new tools to deescalate crisis situations involving this population and then in partnership with community providers divert individuals into treatment services.

V. REFERENCES

500-002 Confinement of Arrestees and Booking Procedures
500-008 Prisoner Transport
600-018 Use of Deadly Force
600-019 Use of Non-Deadly Force
600-020 Use of Force Continuum
Prisoner Transport Van SOP
Crisis Intervention Team (CIT) SOP
CALEA